[Civ. No. 26711. Second Dist., Div. Four. Aug. 7, 1963.]

PATRIZZI EQUIPMENT AND SUPPLY COMPANY, Plaintiff and Respondent, v. GENERAL DYNAMICS CORPORATION CONVAIR DIVISION, Defendant, Cross-complainant and Respondent; SECURITY FIRST NATIONAL BANK, Cross-defendant and Appellant.

Simon Taub, Robert M. Short and A. Marco Turk for Plaintiff and Respondent.

No appearance for Defendant, Cross Complainant and Respondent.

KINGSLEY, J.— Plaintiff brought suit against General Dynamics Corporation Convair Division (hereinafter referred to as "Convair") to recover the purchase price of certain aircraft parts allegedly sold by plaintiff to Convair. Convair answered and cross-complained, admitting liability in the amount claimed, but alleging that it was uncertain whether that liability lay to plaintiff or to cross-defendant bank. Pursuant to stipulation, Convair paid the amount involved into court and the matter proceeded as an interpleader action between plaintiff and the bank on their respective answers to the cross-complaint. After four days of trial without a jury, the court gave judgment against the bank and it has appealed.

Preliminarily it should be stated that Charles A. Patrizzi was the sole owner of plaintiff corporation (Patrizzi Equipment and Supply Company). In his individual capacity and as owner of that corporation, Patrizzi also did business as General Equipment and Supply Company. The latter name was also that of a Nevada corporation which existed for part of the time herein involved. However no claim was made on behalf of the Nevada corporation and we deem its existence, and its status as authorized to do business in California, as immaterial.

As we are required to do on appeal, we state the facts most favorable to respondent. So viewed, the simple story of this case is as follows:

 A corporation known as Bone Engineering Corporation (hereinafter called "Bone") was engaged in the business of manufacturing parts for the use of various aircraft manufacturers. Sometime in early 1960 Patrizzi became associated with Bone as a sales representative. This association was not exclusive, Patrizzi, with the consent of Bone, continuing to act both for himself and for plaintiff corporation in solicit-

ing orders. In early summer Patrizzi was requested by Bone's principal stockholder to assume administrative direction of Bone. It is not clear just when this became effective, but Patrizzi was acting as president of Bone by early September and when the events herein involved took place. .

In September 1960 Bone arranged to borrow a substantial amount of money from cross-defendant bank, the loan to be secured by an assignment of outstanding orders placed with Bone by Convair. Originally Bone executed a blanket assignment of all orders from Convair. Because Convair refused to agree to such a general assignment, a new assignment, listing specific purchase orders by identifying numbers, was executed by Bone, and accepted by Convair and the bank.

Bone shortly found itself in serious financial difficulties. For some time, Patrizzi kept the operation going by advancing monies, either from his own accounts, from his wife's account, or from accounts in the name of General Supply. Ultimately he decided that this was unwise as well as unprofitable, since the monies received for the goods manufactured with his advances were going to the bank in payment of the outstanding loan and none were being repaid to him. Deciding, sometime in November, that he would not advance any more funds to Bone, Patrizzi notified Convair that Bone could not fulfill the balance of the purchase orders theretofore assigned to the bank. As a result of this advice, Convair cancelled the purchase orders and, eventually and after some further negotiations, issued new orders, for the amount of parts still undelivered to it, to plaintiff. Patrizzi thereupon caused the Bone plant (which had been closed when his advances stopped) to be reopened, on an understanding that he would utilize Bone's equipment (already tooled up) and staff (familiar with the Convair requirements) to fill plaintiff's orders from Convair. His evidence indicates that he did, in fact, pay Bone's out-of-pocket costs in connection with these orders together with some additional monies.

Convair paid to the bank all sums due from it on the purchase orders originally issued in the name of Bone for items furnished prior to the cancellation and the sum now in dispute represents only monies due on the portion of the original orders cancelled by Convair and reissued in the name of plaintiff.[1]

---

[1]Counsel for the bank contest this finding; but there is evidence in the record sufficient to support it. The fact that the testimony was

The trial proceeded in an atmosphere of considerable confusion. Both the trial judge and the counsel for plaintiff assumed, with justification, that the bank would contend that Patrizzi had acted fraudulently as against Bone and the bank and that, therefore, either the doctrine of *alter ego* would apply as between Bone and plaintiff or under familiar rules plaintiff held the new Convair orders as a constructive trustee for Bone and the bank. On this assumption, counsel for plaintiff offered, and the trial court admitted, evidence designed to rebut any such contentions. Instead of joining battle on the only issues on which his client could have prevailed, counsel for the bank, throughout four trial days, insisted with vigor and with vehemence that neither *alter ego* nor fraud were issues before the court. Counsel persisted in this position at argument before us.

As a result of this limitation of the issues before it, the court made the only findings and determination open to it—namely that the bank's claim rested on the original purchase orders issued by Convair to Bone, that Convair had fully satisfied its obligations to Bone and to the bank under those orders, and that the bank had no interest in monies due from Convair under different purchase orders, issued to a different vendor.[2] The findings as entered determined all essential issues raised by the pleadings and the pretrial order, as those issues were limited by the position taken by the bank at the trial. The bank objects that no finding was made on the issue of novation. Admittedly, if made, such finding would necessarily have been that (except for the novation involved in substituting the specific assignment of October 10, 1960, for the previous general assignment of September 19, 1960) there was no novation. However, the contention of plaintiff was in the alternative, claiming under either a novation or under a new contract. The finding in plaintiff's favor on the issue of a new contract disposed of the case and a finding on the alternative ground of claim, although proper, was unnecessary and its omission does not prejudice the bank.

Cross-defendant bank made no showing that, under

partially shaken on cross-examination was for the trial court and not for us.

[2] Counsel for the bank contended at oral argument and in a supplementary memorandum that the trial court had found that the purchase orders herein involved were assigned to the bank. A reading of the findings clearly discloses that this is not correct.

the issues it elected to litigate, it had any claim on the monies involved. The burden was on it to show such a claim. It cannot complain of the judgment. (Code Civ. Proc., § 1869; Code Civ. Proc., § 1981; *Washington* v. *Washington* (1949) 91 Cal.App.2d 811, 813 [205 P.2d 736].)

In view of the stipulations as to it, respondent Convair was not a proper party to this appeal; the appeal as to it is dismissed. The judgment in favor of plaintiff and adverse to cross-defendant bank is affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied August 28, 1963.